The next case we're going to hear is Cooper v. Pennsylvania Department of Corrections, Appellate No. 16-1958. We're going to hear Cooper v. Appellate No. 16-1958. Good morning. May it please the court. My name is Selby Brown with Deckert LLP, and along with my co-counsel Steve Brown, I was appointed by this court to represent Appellant Jamil Cooper. I would like to reserve three minutes for rebuttal. To resolve this case, this court need only apply two recent presidential opinions by this court. Those two cases are Wisniewski v. Fisher and Watson v. Rosen. We are here today because Mr. Cooper, pursuant to his job duties, was ordered by a correctional officer to assist a blind inmate draft a grievance. Do you think we need to send this back to the district court to have a chance to consider Wisniewski in light of the job description Mr. Cooper provided the court, or do you think we can decide it on our own? Yes, Your Honor, I think you can decide it here. I think the record is complete enough at this stage for Mr. Cooper to have established at least a genuine issue of fact as to whether his job responsibilities included drafting grievances for inmates. In fact, we're here today because while Mr. Cooper was acting pursuant to his job duties, because he was, four bad things happened to him. First, the first misconduct was falsely issued against him. Second, he was denied law library time. Third, the second false misconduct was issued against him. And on the same day, the defendant Sherman was referring to him as Johnny Cochran to other inmates and telling them that Mr. Cooper would go to the superintendent with anything that happened in the prison. And fourth, because the defendants failed to observe prison procedures and resolving Mr. Cooper's first misconduct. The first three of those events relate to Mr. Cooper's first retaliation claim. The fourth event relates to Mr. Cooper's second retaliation claim, which has also been referred to as a due process violation. Turning to Wisniewski, that case is directly on point and it resolves the issue of whether Mr. Cooper was engaged in constitutionally protected conduct when he was assisting a blind inmate who a correctional officer told him to assist in preparing agreements. Counsel, I just want to go back to your characterizations of the retaliations. You're breaking them into pieces. Is that how you're viewing them as different counts? Like the first misconduct of retaliation and then you got the second misconduct, but you didn't call that a retaliation. You said number four was. I would say that they are each adverse actions, so the different adverse actions that belonged to the two different claims, the first misconduct being invented, the deprivation of law library time and the falsity of the second misconduct. Those all relate to the first claim. First claim being the retaliation claim for his exercising his representation of Mr. Diaz-Cruz. Correct. And then the others were examples of adverse action, correct? Correct. So that's what that is. To the procedural due process claim. Yes, ma'am. The district court basically declined to consider that because it didn't find there was any protected conduct. Correct. So any question I had is the other one. Should we consider that issue on our own? Should we send that back? So really, the due process claim is actually best understood as another First Amendment retaliation claim. And this stems from the district court's decision on a motion to dismiss. So in the district court's decision on the motion to dismiss, that order wasn't appealed, was it? No, that order was not appealed. So let's focus on the summary judgment ruling. The only reason that that's relevant is because that's how the claim was recharacterized. She did not dismiss his due process claim as defendants requested. But what she did say within the retaliation portion of that motion to dismiss was that he had a sufficient claim under Smith v. Mensinger. And then she characterized that as a due process claim. But looking at Smith v. Mensinger, although it says that you have a due process right, it actually says in that case that the plaintiff did not satisfactorily establish that defined claim because he couldn't tether it to a violation of a different constitutional right. So your position is he does this record? Correct. And a tethered right is this right to not be retaliated against for representing a fellow inmate so long as it's within your job duties? Correct. As well as, in connection with the due process claim, his complaints about Defendant Granlund. So Defendant Granlund had a dual motive to retaliate against Mr. Cooper. Isn't that a recharacterization, though, of your brief? Because your claims involving Granlund really had to do with Cooper's complaints about how Granlund managed the group that he supervised. He was complaining he wasn't responsive and was biased in his investigations and more general sets of complaints. Correct. Is that a separate retaliation claim against Granlund, unless you're saying it's not? I'm saying that I guess these two claims are characterized more, separated more by what the adverse actions are rather than what the constitutionally protected conduct was. And in the case of the due process claim, the constitutionally protected conduct is both. Defendant Granlund was motivated both by Mr. Cooper's assistance to the blind inmate, as well as by the retaliatory animus because of the other complaints that Cooper had been making about him generally. What in the record would demonstrate a causal link between his complaints about Granlund in a general fashion and the adverse actions you've just identified? Where could a reasonable juror infer from the record before us that there is some kind of link between the two? Yes, Your Honor. So the record does not specifically state what dates Mr. Cooper made those complaints. However, there is information in the record that Mr. that defendant Granlund was only appointed in 2011. He was a recent appointment to the prison. It also states in Mr. Cooper's affidavit that he made numerous complaints. So I think on this record, a jury could reasonably conclude that those complaints were made within approximate enough time, that that was, and with this retaliatory animus, that they were frequent enough and over, I mean, at a very maximum, a nine-month period. But frankly, that seems unlikely that all those complaints only happened in January. And that's even assuming that that's when Defendant Granlund was appointed. This goes, I do think there's sufficient evidence here for a jury to reach that conclusion based on that 2011 appointment of Defendant Granlund. Let me ask you about Cooper's complaints about Granlund. How do they constitute a grievance? They were oral, I'll grant you that. But are they really a grievance? So what courts have said is that grievances just have to put the defendant on notice. They have to put the prison on notice that the inmate has a problem. Yeah, but the problems that Cooper brought to the prison's attention weren't his problems. They were general complaints about Granlund. I think that may go right back to that First Amendment he was assisting others pursuant to his job duties. Yes, but does it become a grievance by virtue of that? I still think it does, Your Honor, especially because the description of his... I do not have anything on the top of my head, but I would be happy to submit a 28-J letter. All right. Yes, Your Honor. So to turn to the similarities between this case and Wisniewski v. Fisher. The facts of this case could hardly be more similar unless they were actually identical. In Wisniewski's case, he was a legal law library reference aide, and he had been assigned a mentally infirm inmate to his caseload to help him with legal matters. And the inmate wanted to grieve a yard policy. So as a result, Mr. Wisniewski got draft grievances for the yard policy, and those were discovered in his room. And then he was charged with unauthorized group activity and a slew of other things related to that. I assume we agree with you that there's an issue of fact concerning whether his role matches Wisniewski, that there was adverse action, and at the same defense prong, at least there's an issue of fact concerning that. If we were to agree to that, what does that do to your appeal of the court's order denying his request to postpone the summary judgment consideration? You can totally set it aside. That claim would be deemed, that argument would be deemed, the appeal of that order would be deemed withdrawn? Correct. If this Court is to agree with us that the record on these points is sufficient for Mr. Cooper's summary judgment, let me rephrase, if the record is sufficient to reverse the summary judgment order and remand for proceedings to trial, the postponement need not be considered. And if we only say we agree with you on the Wisniewski point but not the Grandland point, I'm talking about the general complaints that Judge Fischer was asking about. If the record is still the record and if we can make that determination, are you going to persist in the appeal of that order? No. I think to the extent that you conclude that Mr. Cooper has made viable claims against each of the defendants, if you conclude that the complaints against Grandland were not an additional reason to retaliate against him, you don't need to resolve that for this case to be. Is that the same, is your position would be the same on the court's denial of his motion to compel? Yes, Your Honor, that my decision, my recommendation would be the same, that you don't need to reach those issues. Let's suppose the flip side is the case, that we don't agree with you that his duties as a block representative were identical to Wisniewski. If we do agree with you that he should have been given more time and that the motion to compel should have been granted, doesn't that put you back in a pretty similar situation? Well, it puts us back before the court where he could actually, presumably, get responses to interrogatories and collect the evidence that he wished to originally collect to support his position about what his duties were as block representative. So to the extent that the court does not agree that Wisniewski... So there's two ways to get you back to where you want to be. Correct, Your Honor. And that was the purpose for making both, is to the extent that the court disagrees with the straightforward application of Wisniewski and was not... Saying these together is tricky. Wisniewski and Watson, then those are the only circumstances when you need to reach the motion to compel and the motion to postpone summary judgment. I see that I have exactly a minute left. To the extent the court has no further questions, I would like to reserve that extra minute for my rebuttal. Okay, that's fine. See you back on the bench. Good morning, Your Honors. And may it please the court, my name is Joseph Fulginetti. I'm an attorney for the Commonwealth of Pennsylvania and the Department of Corrections. I represent the appellees in this matter. We respectfully request that this court affirm all three appealed orders here, that being the December 21st order granting in part and denying in part the motion to defer or postpone summary judgment, and then the March 31st, 2016 orders denying the plaintiff appellant's motion to compel discovery and also granting summary judgment in favor of the defendant appellees in this matter. How is the block representative definition that Mr. Cooper offered to the district court different than the legal reference aid role described in Wisniewski? You know, I think the difference between those definitions is that the legal reference aid that Wisniewski, the duty that he was performing is predominantly legal in nature and that his job is solely to help inmates with legal matters and grievances as well. The block representative has a broader range of duties, the job that the appellant was performing. It is not necessarily legal in nature or even quasi legal in nature. He is sort of a liaison between the inmates housed in a particular housing unit and the unit management team of that unit. So his job may be on certain days to help inmates draft grievances. His job may be to meet with the unit management team on a different day to express concern that some of the inmates on that housing block have about how the meals are being delivered or something of that nature. So it's a broader job. It sounds to me like the distinction is that in Wisniewski he was the attorney and in this case he's the union rep. That is a good way to put it, Your Honor. But I don't necessarily think the court needs to view the application of Wisniewski in that way. You know, it's clear that the court was interested in how Wisniewski applies to this case because while this case was pending, the decision in Wisniewski somewhat changed the landscape in how these cases are determined. But when you look at Wisniewski and this appellant, you do see some differences there. So not only is one a legal referencing and one is a block representative, but probably more important than that, part of the reason that this court decided Wisniewski the way it did and extended constitutional protections to the job that he was doing was based upon the type of misconduct that Wisniewski received. So the misconduct that he received charged him with various things that you would expect him to be doing as a legal reference aid and it made it very easy for the court to determine that there could be some sort of retaliatory motive there. So he was charged with, as opposing counsel said, possessing another inmate's legal work, which is contraband in the institution, and engaging in unauthorized group activity, which again are things you would expect him to be doing as a legal reference aid. But in our case, as a block representative, what the appellant was specifically charged with in both of the grievances, the September 6th grievance and the September 7th grievance, were not things related to his job duties. So they didn't target his job duties when they issued him the misconduct. The only reason he was issued a misconduct on both of those days was his refusal to obey direct orders to return to his cell as all the other inmates had been ordered to do. He refused it multiple times, and actually if you look at the first misconduct that was issued, the September 6th misconduct, they make a notation in there that Cooper had been block carded on August 13th twice and today for the same offense. A block carding is a warning to an inmate. So it indicates that he had specifically been warned about this type of behavior. Does this go to the same defense component? I think this goes to the causation component, Your Honor. I don't think we need to get to Watson in the same defense either, as I don't think we need to apply Wisniewski in the way this court decided it. I think there is a very simple causation argument to be made here for why the misconducts that he received weren't retaliatory. So if the court didn't agree with me and determine that the appellant is very much like Wisniewski despite the fact that there are differences there, I think you can move past that constitutionally protected activity component, go right to the causation component, and where you look at what Wisniewski was charged with and you can easily find causation there based on them targeting his job duties in the misconduct. You have the temporal connection between, you know, in a matter of a very short period of time, you have a request by someone from the institution for Mr. Cooper to go assist Mr. Diaz-Cruz, and then shortly thereafter is the misconduct for not returning to his cell or leaving the area as required, and then the very next day he gets a misconduct. But Mr. Diaz-Cruz, who also didn't move, doesn't receive any penalty. Isn't this really a question for the jury to figure out whether there was a causal link or whether or not he was just a recidivist in terms of not paying attention to directions to leave the area? I think you have it correct there. With regard to the Diaz-Cruz component of this, Diaz-Cruz is a blind inmate. It does not surprise me that the officers on that unit do not expect him to return to his cell as quickly as they would expect Mr. Cooper to return to his cell. In our institutions, often inmates that are either hard of hearing or impaired by sight will have a helper that will come and get them and return them to the cell. I know that might be incredibly reasonable and warranted under whatever the circumstances are, but aren't those fact issues that a jury should consider to determine whether there is a causal connection or whether there is an explanation for why the institution took a certain penalty against one but not the other? I don't think so. I don't think Mr. Diaz-Cruz not being issued a misconduct weighs on Mr. Cooper's misconduct at all. And I think the temporal proximity you might be seeing here is nothing more than a coincidence. I think when you look at that causation component, the temporal proximity is that he refused to return to his cell on this date and then on the next date as well. And it's something that he had done previously, and at some point the officers cannot continue to issue him warnings. They have to issue a misconduct for that type of behavior. If we could talk about the materials we have in front of us concerning the informal resolution process, I guess is how it's described in the DCADM. Where in the record does the defendants refute Cooper's description of what didn't happen and what he says in his affidavit is, I was directed to sign the penalty page or whatever the proper phrase is to call it, and I never got a chance to explain myself. And DCADM 801 only requires an opportunity to explain. It doesn't require very much, but it does require an opportunity to explain. Tell me where in the record that's been disputed. So I think the answer is that when Mr. Cooper appeals his misconduct, and then in the way that he alleges a violation of his due process rights in his complaint and moving through the litigation, he is conflating the informal resolution process with the formal resolution process for a misconduct. Well, let's talk about the informal process, which is what I understand the process that was at play here. Am I correct about that? It was, Your Honor, yes. Okay. Does an ADM 801 permit an opportunity to explain? What it permits is for the inmate who is charged with a misconduct and has elected to go through the informal resolution process to meet with the unit management team, oftentimes either the shift commander or the unit manager, to discuss the circumstances of the misconduct that he received and an appropriate resolution to that. And then the form that you see in the record is that process occurring, the representative from the unit management team signing it, and then also the inmate signing it, and them agreeing upon the appropriate sanction of 14 days of cell restriction, which is not a sanction of disciplinary custody. It doesn't force him to a restricted housing unit. It simply restricts his privileges on the unit for a period of two weeks. Had the appellant decided that he did not want to participate in the informal resolution process, which seems likely based on his appeals, where he complains about not receiving findings of fact and not being able to call witnesses. I'm not even focused on that because I understand your distinction between what happened and what he wished happened or maybe wanted to happen. Yes. I'm focused on what happened at that informal resolution process because there's nothing in the record in front of us that I saw, and I'm happy to be directed to it, where the defendants provide an account of what happened during that process. We have a piece of paper that says what the resolution was, but not the, I think you used the word, an opportunity to discuss. Discussion usually is two ways. Yes. His account of it, which is the only account we have of what happened, is he was told what to do. Sign this piece of paper. You're lucky this is all that you're getting. Pull stop. So aren't we in a position where we don't have anything other than his account that the requirements of the informal process in 8080 and 801 were not met? What are we to do with that? I don't think this court has to do anything with that, I think. Except to say there's an issue of fact because it's not refuted. Well. I guess we could, you know, maybe there should have been somebody's judgment in his favor on that. I don't know. Well, I'm not sure what there would have been to refute there. How about an account of what happened from the other participants in the discussion? I don't have an account of what happened from the other participants in the discussion. I have the report indicating that the agreement was a 14-day period of cell restriction. I guess my response would be that what he's claiming here is retaliation in the issuance of his misconduct, which got him to that informal resolution meeting. If what he was claiming was that beyond a due process violation, he has some sort of super appeal ability from the misconduct procedure to this court, he's mistaken there. So this court doesn't have the authority to reach in and correct an intra-institutional misconduct proceeding. It can certainly find that there was a retaliatory motive. It can find that due process wasn't met. But what you're asking me to respond to is whether or not the policy was followed such that it was a full and fair hearing in the way that a criminal hearing might be. I understand what you're saying. It's not meant to be that. I totally get that. My only question was, is there anything in the record that provides the other account that that informal process happened in the way ADM 801 expected it to happen? And all we have is his account. If, perhaps, responses to interrogatories were given, maybe we would have had something. I do want to ask you about that. In light of the nature of the responses to the interrogatories, which really didn't provide hardly anything, should we revisit that? I don't think so, Your Honor. I think there are two things to look at here. One, whether or not he filed a somewhat or even unreasonably timely motion to compel discovery, and whether or not those responses were appropriate when they were issued. My position, obviously, is that the responses were appropriate when they were issued. If you look at what the interrogatories seek, all 102 of them, they do irregular things. They ask for the defendant at police to identify themselves, but they don't indicate in any way what that identification is based on. They ask for the defendant at police to identify other individuals, but, again, don't indicate what that is to be based on. They ask for the defendants to opine about certain documentation that's not attached to the interrogatory. And then they seek legal conclusions as to some of the ultimate issues in the case. I think my responses to those, and the way in which I provided very specific citations to what my problems with them were, put the appellant on notice as to a way that he could have resubmitted them to avoid some of the issues that I had when I originally received them. Now, I issued my responses to those on May 19th in 2014. Well, I think the court's aware of the time frame in that he waited 19 months before he complained. Yes, he did, Your Honor. I understand your point about the timing in terms of the district court not abusing its discretion in determining he waited too long. Yes. And his case managed authority under Rule 16 to make that sort of decision. I totally understand your point on that. My question was going to the issues you were just discussing, which is, even so, should the district court have looked beyond that to at least require you to give more? And your position is, his questions were phrased in such a way I couldn't. Yes. They also kind of merged admissions, interrogatories, requests for documents, which in pro se cases isn't unusual, but it did it in such a way that it made it very difficult to respond to. So I think that would be our position as to those. I'll just touch briefly in my remaining time on the motion to defer or postpone summary judgment. Again, our position, the court did not abuse its discretion there. Well, why not? I mean, there was this period of time when Cooper was in New Jersey. Yes. He didn't have his records. He was waiting for the court to rule on his motion to amend the judgment. And why wasn't the request for additional time before considering summary judgment, why wasn't that abuse of discretion? I think what the district court did here, in a very well-reasoned opinion, was take a look at all of the types of evidence under 56D the appellant was looking for, and in turn indicate why either he already had access to those things and had proven it by submitting portions of those previously, or it was simply something that he didn't need. So those were meeting minutes to assert that he was a black representative. That was not in dispute. And he had made that assertion. It was not contradicted. They were affidavits from other inmates to, I suppose, opine about the tension on the unit or kind of the interaction between officers. He had an affidavit from himself that made that indication. There were cell restriction policies that he asked for, but he had submitted portions of those policies previously, indicating to the court that he either possessed them or couldn't get a hold of them. And then also he mentioned the interrogatory responses, which the court dealt with in its order denying his motion to compel discovery. So I think in every way under 56D that he indicated there may be more things he needed, and I see my time's up, if I could just finish. At least two. In every way that he indicated there may have been more things he needed to respond to summary judgment, I think the district court did a very efficient job of addressing each one of those things in its opinion on that order. Thank you, Your Honor. Thank you. Thank you. Good morning, Your Honors. So unless the court has specific questions for me, I have a few points I'd like to make. The first one is that at Cora, the court identified this is about a question of fact. It's on the issue of whether Mr. Cooper was obeying orders. He has at all times contended that he was not disobeying orders. He was not disobeying orders. when any of this happened. On whether Mr. Diaz-Cruz would have been given more leniency because he was blind. There's certainly an issue of fact about that in the record. In support of their summary judgment motion, defendants submitted two things. They submitted the DCM policies, and they submitted the misconduct report from Mr. Cooper. They did not submit any affidavits from the defendants detailing the processes of what happened or any other evidence that might buttress the facts that appellees are now trying to create issues with on appeal. In fact, it's really just Mr. Cooper's version of events that we have in front of us. The other thing regarding Wisniewski, appellees have argued that Wisniewski can't apply unless the correctional officer specifically indicates in the misconduct that they're issuing the misconduct because the inmate was engaging in constitutionally protected conduct. That just simply cannot be the case or else we would never have retaliation based on misconduct. And as courts have routinely recognized in the circuit, retaliation claims are almost always established through circumstantial evidence rather than direct evidence such as that. But I think that the opposing counsel is parsing this a little bit differently. He was essentially saying that in Wisniewski, Wisniewski's misconduct was for performing legal duties of which he was assigned. And Cooper's misconduct was because he didn't return to the cell, which he was told to do. Yes, Your Honor, but in this case... And that act of defiance didn't fall within, even if he had legal duties within his title of block representative, what the misconduct was that he was charged with didn't fall within that constitutionally protected activity. Even if the defendants are right on this point, which I still don't think that they are. But even if they are, Mr. Cooper was... The only reason he was outside his cell was because he was carrying out his job responsibilities. Okay, that may be true. They sent him to get down and help Mr. Diaz to get down to the first level. He's up on the fifth level. Something happens. I'm not sure what exactly happened here. Was it shift change? Shift change. Shift change. Well, there could have been some other disturbance. Don't the correctional officers have the right in maintaining control of the prison to say, look, go back to your cell? Your Honor, I do think that prison officers, that correctional officers have the right to say, go back to your cell. But what they don't have the right to do... One, Mr. Cooper still does not maintain that he was ever ordered to go back to his cell at that time. His affidavit says, because of the way he looked at me, I thought I might follow this up at a later time. And so he just peaceably left after Defendant Sherman said, so you think you know how to write people up? That's Mr. Cooper's version of events. So under that, even under Appellee's version of Wisniewski, this falls fairly neatly into that bucket. Turning to the record that he wasn't allowed to say his piece, Stretched Words, is 100% correct that the record has no indication from any of the appellants about what happened that day. In fact, the informal resolution action form is completely blank in the section that says reason. So where you might expect an officer to have explained that he had a conversation with the inmate or that he disagreed with the inmate, that form is blank, and that's on JA-165. As to Appellee's point that it is Mr. Cooper's appeal of that decision that indicates that he thought he was entitled to a written response, what that actually says is inmate EZ-3208 was not allowed to put up a defense or confirm or deny the allegations against him, charges against him, by CO Sherman. It doesn't say anything about that being in writing. There's at least a question of fact over whether he was allowed to say anything or write anything, even if the only thing we had was this appellate form. But we also have his affidavit saying he wasn't allowed to say anything, and that's entirely uncontested in the record. I'm sorry. I realize I'm out of time. Thank you very much for your arguments. Thank both counsel for your well-argued and well-briefed cases. Thanks to you and the firm for allowing me to accept the appointment in this case. Thank you. Thank you. Thank you.